UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:16-CV-80148-ROSENBERG/BRANNON

BYRON L. HARRIS, JR.,

    Plaintiff,

v.

CITY OF BOYNTON BEACH *et al.*,

    Defendants.

_____/

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**THIS CAUSE** is before the Court on the following seven Motions: **(1)** Defendant, City of Boynton Beach's, Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law [DE 5]; **(2)** Defendant, Cory Herny's Motion to Dismiss Count XIX with Prejudice and Incorporated Memorandum of Law [DE 13]; **(3)** Defendant Ronald Ryan's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law [DE 15]; **(4)** Defendant, Justin Harris's, Motion to Dismiss and Incorporated Memorandum of Law [DE 20]; **(5)** Defendant Martinez's Motion to Dismiss Plaintiff's Complaint [DE 22]; **(6)** Defendant Maiorino's Motion to Dismiss Complaint (Counts XVII and XIX) and Memorandum of Law [DE 26]; and **(7)** Defendant Matthew Medeiros' Motion to Dismiss Counts XVII and XIX of the Complaint [DE 29]. The Court has carefully considered these Motions, and the parties' respective responses in opposition thereto and replies in support thereof, and is otherwise fully advised in the premises. For the reasons set forth below, Defendants' Motions are **GRANTED** only to the extent that Count XIX of Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. In all other respects, Defendants' Motions are **DENIED**.

## I.   INTRODUCTION

This is an action for deprivation of constitutional rights, state law battery, and conspiracy. Plaintiff Byron L. Harris, Jr. ("Plaintiff") alleges that multiple Boynton Beach Police Officers used excessive force or failed to intervene to prevent the use of excessive force against him while arresting Plaintiff on August 20, 2014, depriving Plaintiff of his constitutional rights and committing battery under Florida law. Plaintiff further alleges that these officers later conspired to report a false version of events in an effort to avoid liability and to deprive Plaintiff of his constitutional rights.

Altogether, Plaintiff's Complaint includes 18 claims against the City of Boynton Beach ("the City") and seven individual Boynton Beach Police Officers: Count I seeks to hold the City liable under 42 U.S.C. § 1983 by alleging that a policy, practice, or custom of the City caused the deprivation of Plaintiff's constitutional rights; Count II seeks to hold the City vicariously liable for the battery committed by its officers; Counts III, V, VII, IX,[1] XI, XIII, and XV seek to hold Boynton Beach Police Officers Michael Brown ("Officer Brown"), Matthew Medeiros ("Officer Medeiros"), Stephen Maiorino ("Officer Maiorino"), Ronald Ryan ("Officer Ryan"), Justin Harris ("Officer Harris"), Cory Herny ("Officer Herny"), and Alfred Martinez ("Officer Martinez") respectively liable under 42 U.S.C. § 1983 for their use of excessive force in deprivation of Plaintiff's constitutional rights; Counts IV, VI, VIII, X, XII, XIV, and XVI seek to hold Officers Brown, Medeiros, Maiorino, Ryan, Harris, Herny, and Martinez respectively liable for battery; Count XVII seeks to hold Officers Brown, Medeiros, Maiorino, Ryan, Harris, Herny, and Martinez liable under 42 U.S.C. § 1983 for failing to intervene to prevent the use of

---

[1] The ninth count in Plaintiff's Complaint is improperly labeled Count IV. The Court refers to this Count as Count IX to avoid confusion with the fourth count in Plaintiff's Complaint, which is properly labeled Count IV.

excessive force in deprivation of Plaintiff's constitutional rights; and Count XIX[2] seeks to hold Officers Brown, Medeiros, Maiorino, Ryan, Harris, Herny, and Martinez liable for conspiracy to deprive Plaintiff of his constitutional rights. *See* DE 1 at 7–34.

In response to Plaintiff's Complaint, the City filed a Motion to Dismiss Counts I and II. *See* DE 5. Officer Brown filed an Answer and Affirmative Defenses to Counts III, IV, XVII, and XIX. *See* DE 12. Officer Medeiros filed an Answer and Affirmative Defenses to Counts V and VII, *see* DE 28, and filed a Motion to Dismiss Counts XVII and XIX. *See* DE 29. Officer Maiorino filed an Answer and Affirmative Defenses to Counts VII and VIII, *see* DE 25, and filed a Motion to Dismiss Counts XVII and XIX. *See* DE 26. Officer Ryan filed an Answer and Affirmative Defenses to Counts IX and X, *see* DE 14, and filed a Motion to Dismiss Counts XVII and XIX. *See* DE 15. Officer Harris filed a Motion to Dismiss Counts XI, XII, XVII, and XIX. *See* DE 20. Officer Herny filed a Motion to Dismiss Count XIX. *See* DE 13. Officer Martinez filed an Answer and Affirmative Defenses to Counts XV and XVI, *see* DE 21, and filed a Motion to Dismiss Counts XVII and XIX. *See* DE 22.

The Court agrees with Officers Medeiros, Maiorino, Ryan, Harris, Herny, and Martinez that Count XIX must be dismissed with prejudice because it is barred by the intracorporate conspiracy doctrine. As to Counts I, II, XI, XII, and XVII, however, the Court finds the allegations in Plaintiff's Complaint sufficient to state a plausible claim to relief notwithstanding Defendants' arguments to the contrary. Accordingly, the City shall answer Counts I and II, Officer Harris shall answer Counts XI, XII, and XVII, Officer Herny shall answer Counts XIII, XIV, and XVII, and Officers Medeiros, Maiorino, Ryan, and Martinez shall answer Count XVII.

---

[2] The eighteenth and final count in Plaintiff's Complaint is improperly labeled Count XIX.

3

## II.  BACKGROUND[3]

In the early morning hours of August 20, 2014, Plaintiff was driving his vehicle on Seacrest Boulevard near Gateway Boulevard in Boynton Beach, Florida when Officer Harris, driving a marked police cruiser, attempted to stop Plaintiff for allegedly disobeying a stop sign. DE 1 at 9 ¶ 10. Rather than stop, Plaintiff panicked and drove away from Officer Harris. *Id.* ¶ 11. Officer Harris pursued Plaintiff as he traveled west on Gateway Boulevard toward Interstate 95 ("I-95"). *Id.* ¶ 12.

Joining the effort to stop Plaintiff, Officer Williams exited his vehicle on Gateway Boulevard and threw "stop sticks" onto the road, but Plaintiff avoided them and continued onto I-95. *Id.* ¶ 13. Officer Harris, following Plaintiff at a high rate of speed, struck Officer Williams with his vehicle. *Id.* Officer Harris then stopped to help Officer Williams. *Id.*

As Plaintiff continued on I-95, he was pursued by eight or nine Boynton Beach Police Officers until he exited I-95 at 6th Avenue in Lake Worth. *Id.* at 10 ¶ 14. When Plaintiff finally stopped to surrender, the driver's side door of his vehicle was rammed shut and blocked by a police cruiser driven by Officer Brown. *Id.* ¶ 14. Plaintiff yelled "I surrender" and lifted his hands up off the steering wheel in a position indicating surrender. *Id.* ¶ 15.

Approximately nine Boynton Beach Police Officers then surrounded Plaintiff's vehicle with guns drawn, violently yanked Plaintiff and his two passengers from the vehicle, threw them to the ground, and began to hit, punch, kick, knee, tase, and otherwise repeatedly and violently beat them while other officers watched without intervening. *Id.* Meanwhile, a Palm Beach County Sheriff's Office helicopter overhead captured the events on video. *Id.* ¶ 16.

---

[3] The background facts set forth herein are drawn from Plaintiff's Complaint. For the purposes of this Order, the Court views the Complaint in the light most favorable to Plaintiff and accepts all of Plaintiff's well-pleaded facts as true. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007) (citing *St. Joseph's Hosp. v. Hospital Corp. of America*, 795 F.2d at 954 (11th Cir. 1986)).

4

The officers involved in this incident subsequently submitted reports that were materially false and laden with omissions, stating that Plaintiff and his passengers resisted arrest, refused to exit the vehicle, and otherwise fought with the officers attempting to arrest them. *Id.* These reports also falsely stated that it was Plaintiff, not Officer Harris, who struck Officer Williams with his vehicle. *Id.* Prior to submitting these false reports, the officers agreed among themselves to lie about what had happened in an effort to avoid liability. *Id.* at 10–11 ¶ 17.

These officers' use of excessive force during Plaintiff's arrest and subsequent agreement to report a false version of events are representative of a broader policy, practice, or custom condoned by the City. *Id.* at 12–13 ¶¶ 22–23. Since at least 2009, if not earlier, the Boynton Beach Police Department and its officers have repeatedly been the subject of numerous civilian complaints and investigations concerning police misconduct, falsified reports, use of excessive force, and cover-ups. *Id.* Meanwhile, the City has failed to discipline these officers, investigate complaints of excessive force, and challenge the results of internal investigations. *Id.* As a result, many officers—including Officers Brown, Medeiros, Maiorino, Ryan, Harris, Herny, and Martinez—have consistently engaged in such misconduct with impunity. *Id.* at 13 ¶ 24.

### III.   LEGAL STANDARD

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). When

determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). In sum, "[t]he plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

## IV.   DISCUSSION

Applying these principles to the allegations contained in Plaintiff's Complaint, the Court concludes that Counts I, II, XI, XII, and XVII state a plausible claim to relief. Count XIX, however, must be dismissed.

### A. Count I

In Count I of his Complaint, Plaintiff alleges that certain policies, practices, or customs maintained by the City since 2009 caused the deprivation of Plaintiff's constitutional rights. The City argues that Plaintiff's Complaint is devoid of sufficient factual allegations to state such a claim. The Court concludes that Plaintiff has alleged a plausible claim to relief. Dismissal is therefore inappropriate.

To hold the City liable under § 1983 for deprivation of his constitutional rights, Plaintiff "must ultimately prove that the City had a policy, custom, or practice that caused the deprivation." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Plaintiff may establish such municipal liability several different ways:

> A municipality can be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council). Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure. And a municipality can be held liable on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority.

*Id.* (internal quotation marks and citations omitted).

Rather than pointing to any official policy enacted by the City's legislative body, Plaintiff's claim rests on the contention that the City has developed and maintained certain unofficial policies, practices, or customs condoning police misconduct since at least 2009, which in turn caused the use of excessive force against him. Contrary to the City's assertion that Plaintiff's Complaint contains nothing but a series of naked and conclusory statements insufficient to state a plausible claim to relief, Plaintiff's Complaint includes the following factual allegations in support of this claim:

- Defendant CITY, specifically with the knowledge of Police Chief Jeffrey Katz, authorized, tolerated as institutionalized practices and ratified the officers' misconduct by, among other acts:

    1. Failing to properly discipline, restrict, and control employees, including Defendants BROWN, MEDEIROS, MAIORINO, RYAN, HARRIS, HERNY and MARTINEZ, who, based on public records requests, media reports, legal documents and reports and statements made by the police department, were known to be reckless and unnecessarily violent in their treatment of persons in the community, including potential arrestees;

7

   2. Failing to establish and/or endure the functioning of a bona fide and meaningful departmental system for dealing with complaints of police misconduct, instead of responding to such complaints with bureaucratic power and official public denials which are/were calculated to mislead the public. *See* DE 1 at 11 ¶ 17.

- The abuse sustained by Plaintiff Harris due to the excessive and unnecessary force used by Defendant City and its employees is part of a larger and historically repetitive pattern of excessive force, which amounts to an unofficial custom or policy by the City, and which has been adopted and approved by Boynton Beach Police Chief Jeffrey Katz for many years in his position as both head of the Boynton Beach Police Professional Standards Division, and now in his capacity as police chief for the City of Boynton Beach. *See id.* at 12 ¶ 22.

- In each and every year since at least 2009, the City of Boynton Beach Police Department has repeatedly been the subject of numerous civilian complaints and investigations into police misconduct, falsified police reporting, use of excessive force, and "cover ups" for fellow officers. Many of these officers are repeat offenders, who only receive a "slap on the wrist" and then continue the same behavior without fear of repercussions. Moreover, the City has failed to appropriately discipline or prosecute officers for known incidents of excessive force, to investigate complaints of excessive use of force, and to overrule conclusions within the police department in spite of overwhelming evidence that such incidents were unjustified and improper. These are not isolated instances, but make up a pattern and practice of misconduct which have been accepted and/or condoned by Police Chief Jeffrey Katz as a final policymaker for the police department and therefore, the City of Boynton Beach. *See id.* at 12–13 ¶ 23.

- Upon information and belief, the named officers involved in the subject incident have been cited or investigated for occasions of misconduct, and the City had prior notice of the propensities of Defendants MICHAEL BROWN, MATTHEW MEDEIROS, STEPHEN MAIORINO, RONALD RYAN, JUSTIN HARRIS, CORY HERNY, and ALFRED MARTINEZ to be violent, to falsify police reports, and/or intentionally abuse their positions as police officers, but took no steps to prevent Defendants to correct their abuse of authority or to discourage their unlawful use of authority. *See id.* at 13 ¶ 24.

- The constitutional violations and deprivations were caused by Defendant CITY's numerous areas of deliberate indifference and/or adopted customs or policies as outlined in Paragraphs 1-25, above including:

   a. custom of condoning alleged instances of police brutality and excessive force without punishing its officers. The above mentioned incident that occurred on August 20, 2014 was not an isolated incident. Defendant

    CITY has a history of exonerating officers for allegedly using excessive force against its citizens. Officers within the Boynton Beach Police Department are secure in knowing that a reported incident will not result in disciplinary proceedings, and that other officers will stand up for that officer. CITY condones the officers' actions even where citizens have complained that the force is excessive, and Police Chief Jeffrey Katz has publically stated that he "Stands by his officers" on numerous occasions. Prior to August 20, 2014, Defendant CITY permitted and tolerated the practice of unjustified and unreasonable force by its officers.

b. failure to enforce compliance with a ensuring accurate and truthful police reports are created following an incident of use of force. CITY condones its officers' submission of embellished, inaccurate and materially false police reports, and officers do not fear punishment for submission of such falsified reports. Prior to August 20, 2014, Defendant CITY permitted and tolerated the use of false police reports submitted by its officers.

c. Since at least 2009, refusing to competently and impartially investigate allegations of abuse, dishonesty, and misconduct alleged to have been committed by City of Boynton Beach police officers;

d. Covering up acts of misconduct and abuse by Boynton Beach Police officers and sanctioning a code of silence by and among officers;

e. failing to adequately train and educate officers in the use of reasonable and proper force and failed to enforce the department's written regulations with respect to uses of force;

f. failing to adequately supervise the actions of officers under their control and guidance;

g. condoning and participating in the practice of prosecuting known groundless criminal charges ( i.e. resisting arrest) for the purpose of insulating the City of Boynton Beach and its officers from civil liability and reducing or dismissing criminal charges against individuals in return for release from civil liability;

h. condoning and encouraging a conspiracy of silence among their employees for the purpose of concealing and furthering wrongful and illegal conduct by their employees;

i. engaging in the practice and custom of withholding from criminal defendants, judges and prosecutors, known *Brady* evidence unfavorable to their officers in violation of the law and the Constitution.

9

      j.   fostering and encouraging an atmosphere of lawlessness, abusiveness, dishonesty, and unconstitutional misconduct, which by August 20, 2014 and thereafter, represented the unconstitutional policies, practices and customs of the City of Boynton Beach. *See id.* at 14–39 ¶ 29.

These are not the type of naked allegations warranting dismissal. Rather, these allegations are "sufficient to state a facially plausible municipal liability claim because they permit 'the reasonable inference that [the City] is liable for the misconduct alleged.'" *Hoefling*, 811 F.3d at 1281 (quoting *Iqbal*, 556 U.S. at 678); *see also id.* at 1280–81 (reversing dismissal of municipal liability claim where complaint sufficiently alleged a policy, practice, or custom of the defendant city that caused the seizure and destruction of plaintiff's sailboat); *cf. Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1328–30 (11th Cir. 2015) (affirming dismissal of municipal liability claim where complaint did not allege a pattern of similar constitutional violations because it alleged no facts to support "conclusory allegation that the Sheriff's Office was 'on notice' of the need to 'promulgate, implement, and/or oversee' policies pertaining to the [appropriate] 'use of force'"). Dismissal of Count I is therefore inappropriate.

### B. Count II

In Count II of his Complaint, Plaintiff alleges that the City is vicariously liable for battery committed by Officers Brown, Medeiros, Maiorino, Ryan, Harris, Herny, Martinez, and others during the course and scope of their employment, *i.e.* while arresting Plaintiff on August 20, 2014. The City argues that this claim is inconsistent with Plaintiff's claims for battery against these Officers individually and must therefore be dismissed. The Court disagrees.

The City correctly notes that "Florida's sovereign immunity statute renders the liability of the officers and their respective employers mutually exclusive." *Perez v. Sch. Bd. of Miami-Dade Cty., Fla.*, 917 F. Supp. 2d 1261, 1268 (S.D. Fla. 2013) (citing Fla. Stat. § 768.28(9)(a)). Under Florida law, sovereign immunity is waived and an action against the municipality is a plaintiff's

exclusive remedy for torts committed by a municipal employee *unless* the employee "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property," in which case sovereign immunity is not waived and an action against the municipality is not permitted. Fla. Stat. § 768.28(9)(a). With respect to Plaintiff's allegations of battery, *either* the City *or* one or more of its officers may be held liable, but not both.

However, this does not mean that Plaintiff cannot assert claims for battery against both the City and Officers Brown, Medeiros, Maiorino, Ryan, Harris, Herny, and Martinez. Plaintiff need only plead his alternative claims in separate counts, as he has done in his Complaint. *See Perez*, 917 F. Supp. 2d at 1268 (permitting plaintiff to plead assault and battery claims against both officers and their municipal employers but requiring plaintiff to plead each claim in a separate count); *see also* Fed. R. Civ. P. 8(d) (permitting alternative and inconsistent claims). Dismissal of Count II is therefore inappropriate.

C. **Counts XI and XII**[4]

Counts XI and XII of Plaintiff's Complaint are directed against Officer Harris. In Count XI, Plaintiff alleges that Officer Harris used excessive force against him during his arrest in deprivation of his constitutional rights. *See* DE 1 at 25–26. In Count XII, Plaintiff alleges that Officer Harris committed battery against Plaintiff during his arrest. *See id.* at 26–27. Officer Harris argues that the factual allegations in Plaintiff's Complaint are inconsistent with the conclusion that Officer Harris was at the scene of Plaintiff's arrest and that Officer Harris is therefore entitled to dismissal of all claims against him. Viewing the Complaint in the light most

---

[4] Officer Harris seeks dismissal of all claims against him, including Counts XI and XII (which are directed against Officer Harris only) and Counts XVII and XIX (which are directed against Officers Brown, Medeiros, Maiorino, Ryan, Harris, Herny, and Martinez). The Court addresses Counts XVII and XIX separately.

favorable to Plaintiff and accepting all of Plaintiff's well-pleaded facts as true, the Court disagrees.

Plaintiff's Complaint includes the following allegations: After attempting unsuccessfully to stop Plaintiff following a traffic violation, Officer Harris pursued Plaintiff as he traveled west on Gateway Boulevard toward I-95. *See id.* at 9 ¶¶ 10–12. Joining the effort, Officer Williams threw "stop sticks" onto Gateway Boulevard, but Plaintiff managed to avoid them and continued onto I-95. *Id.* ¶ 13. Officer Harris, following Plaintiff at a high rate of speed, struck Officer Williams. *Id.* Officer Harris then stopped to help Officer Williams. *Id.* Pursued by another eight or nine Boynton Beach Police Officers, Plaintiff continued on I-95 for some time before exiting at 6th Avenue in Lake Worth. *Id.* at 10 ¶ 14. When Plaintiff finally stopped, these officers surrounded Plaintiff's vehicle with guns drawn, violently yanked Plaintiff and his two passengers from the vehicle, threw them to the ground, and began to hit, punch, kick, knee, tase, and otherwise repeatedly and violently beat them while other officers watched without intervening. *Id.* ¶ 15. Officer Harris was one of the officers on the scene. *See id.* at 25–27, 31–32.

As Officer Harris points out, Plaintiff does not allege that Officer Harris rejoined the pursuit after stopping to help Officer Williams. Nevertheless, accepting the facts alleged as true and viewing the Complaint in the light most favorable to Plaintiff, the Court must infer that he did so, and that he was able to catch up with Plaintiff by the time he surrendered despite having stopped to help Officer Williams. To do otherwise would require the Court to disregard Plaintiff's allegation that Officer Harris was among the arresting officers. Officer Harris's arguments for dismissal—all of which rest on the contention that Plaintiff's Complaint establishes that he was not at the scene of Plaintiff's arrest—are therefore unavailing.

The Court notes, however, that Plaintiff has suggested there may have been a different officer by the name of Justin Harris who was present at the scene of Plaintiff's arrest. *See* DE 48 at 5 n.2. If discovery has confirmed that fact, Plaintiff may file a motion for leave to amend his Complaint accordingly.

### D. Count XVII

In Count XVII of his Complaint, Plaintiff alleges that Officers Brown, Medeiros, Maiorino, Ryan, Harris, Herny, and Martinez failed to intervene "to prevent excessive force from being committed against Plaintiff when they had a reasonable opportunity to do so." *See* DE 1 at 31–32 ¶ 104. To support this claim, Plaintiff alleges that these Officers "all were in close enough proximity to express the need to cease the brutal and unreasonable beating of Plaintiff and his passengers after they had surrendered." *Id.* at 31 ¶ 103. These and other allegations contained in Plaintiff's Complaint are sufficient to state a claim for failure to intervene. Dismissal of Count XVII is therefore inappropriate.

> [A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance. For liability to attach, the plaintiff must show that the non-intervening officer was in a position to intervene yet failed to do so. Whether the officer had time to intervene is a relevant consideration.

*Marantes v. Miami-Dade Cty.*, No. 15-13333, 2016 WL 1696838, at *6 (11th Cir. Apr. 28, 2016) (internal quotation marks and citations omitted).

Viewing the Complaint in the light most favorable to Plaintiff and accepting all of Plaintiff's well-pleaded facts as true, Plaintiff's Complaint establishes that Officers Brown, Medeiros, Maiorino, Ryan, Harris,[5] Herny, and Martinez were present when "approximately nine

---

[5] For the reasons set forth above with respect to Counts XI and XII, the Court rejects Officer Harris's argument that Plaintiff's Complaint establishes he was not present at the scene of Plaintiff's arrest. Officer Harris is therefore not entitled to dismissal on that basis with respect to Count XVII.

officers swarmed with guns drawn, and violently yanked Plaintiff Harris and his two occupants out of the passenger side of the vehicle, threw them to the ground, and immediately began to hit, punch, kick, knee, 'tase,' and otherwise repeatedly violently beat them, while other officers watched without intervening." *See* DE 1 at 10 ¶ 15; *see also, e.g.*, *id.* at 14 ¶ 28, 16 ¶¶ 30–31, 17–18 ¶¶ 34–37. These allegations establish that Officers Brown, Medeiros, Maiorino, Ryan, Harris, Herny, and Martinez were aware of the use of excessive force against Plaintiff, that these Officers were in close proximity to the use of excessive force, and that the use of excessive force continued for a sufficient duration to provide a reasonable opportunity to intervene. In other words, Plaintiff's Complaint states a plausible claim that these Officers were in a position to intervene yet failed to do so. To the extent Plaintiff alleges that Officers Brown, Medeiros, Maiorino, Ryan, Harris, Herny, and Martinez were active participants in the use of excessive force, and to the extent such allegations are inconsistent with the claim that these Officers were in a position to intervene to prevent the use of excessive force, the Court notes that Plaintiff may assert alternative and inconsistent claims. *See* Fed. R. Civ. P. 8(d). Dismissal of Count XVII is therefore inappropriate.

### E. Count XIX

In Count XIX of his Complaint, Plaintiff alleges a conspiracy between Officers Brown, Medeiros, Maiorino, Ryan, Harris, Herny, and Martinez to deprive Plaintiff of his constitutional rights. *See* DE 1 at 32–34. Specifically, Plaintiff alleges that these Officers agreed to report a false version of events in an attempt to avoid liability for their use of excessive force. *See id.* at 32–33 ¶ 108. Count XIX fails for at least two reasons: (1) it fails to allege a conspiracy that resulted in the denial of a constitutional right; and (2) it is barred by the intracorporate conspiracy doctrine.

14

First, Count XIX of Plaintiff's Complaint fails to allege a conspiracy that resulted in the denial of a constitutional right. This is a necessary element of a § 1983 claim for conspiracy to violate constitutional rights:

> A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right. The plaintiff attempting to prove such a conspiracy must show that the parties reached an understanding to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy.

*Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (internal quotation marks and citations omitted).

Here, Plaintiff alleges that that Officers Brown, Medeiros, Maiorino, Ryan, Harris, Herny, and Martinez conspired to deprive Plaintiff of his constitutional rights, including his right to be free from excessive force. DE 1 at 32 ¶ 106. To support his claim that these Officers "agreed to act in concert and acted in concert with one another to inflict all of the above harms and injuries upon [him]," Plaintiff alleges that these Officers agreed to:

> concoct and compose their police reports such that their reported "facts" were essentially the same story; agree to be silent as to the unsolicited and unnecessary use of force on Plaintiff and his passengers after his vehicle had been stopped and he had surrendered; agree to state that Plaintiff resisted arrest; agree to state that Plaintiff struck Officer Williams first with his vehicle, although this was not seen by the officers; and otherwise create an illusion of propriety and to shield themselves from liability and scrutiny for their wrongful, deceitful, and violated actions taken against Plaintiff.

*Id.* at 32–33 ¶ 108. Each of these conspiratorial acts occurred *after* the alleged denial of Plaintiff's constitutional rights. There is no allegation in Plaintiff's Complaint that at any point *prior to* or *during* the high-speed pursuit and arrest, these Officers reached an understanding to use excessive force against Plaintiff, fail to intervene to prevent the use of excessive force against Plaintiff, or otherwise deny Plaintiff his constitutional rights. Rather, Plaintiff alleges that

15

these Officers agreed to lie about having done so after the fact. Their alleged conspiracy could not have resulted in the denial of Plaintiff's constitutional rights that had already occurred, and Plaintiff does not allege that it resulted in a denial of his constitutional rights separate and apart from the prior use of excessive force against him. In the absence of any alleged denial of Plaintiff's constitutional rights resulting from an understanding reached between Officers Brown, Medeiros, Maiorino, Ryan, Harris, Herny, and Martinez, Count XIX fails to state a plausible claim.

Second, Count XIX of Plaintiff's Complaint is barred by the intracorporate conspiracy doctrine, which "holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Grider*, 618 F.3d at 1261 (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)). Under this doctrine—which applies to public entities and their personnel—"a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Id.*

Relying on *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761 (11th Cir. 2000), Plaintiff argues that his claim falls within an exception to the intracorporate conspiracy doctrine.

> In *Dickerson*, [the Eleventh Circuit] observed that other circuits, while applying the intracorporate conspiracy doctrine in § 1985 civil rights cases, have recognized exceptions (1) for "convictions involving criminal charges of conspiracy," (2) where the employee has an "independent personal stake" in his unconstitutional acts and is not acting to further the corporation's illegal objective, or (3) where the employees "engage in a series of discriminatory acts as opposed to a single action" over a significant period of time in the employment setting.

*Id.* at 1262 (quoting *Dickerson*, 200 F.3d at 768–70 at n.9). Specifically, Plaintiff attempts to invoke the second of these exceptions, asserting "that each officer involved attempted to 'create an illusion of propriety and to shield themselves from liability and scrutiny for their wrongful,

16

deceitful, and violent actions taken against Plaintiff,' thus indicating their personal stake in avoiding the consequences for each officer's unconstitutional acts." *See, e.g.*, DE 49 at 7–8. However, "[b]ecause none of those exceptions applied to the facts of *Dickerson*, [the Eleventh Circuit] '[did] not reach the issue of whether to adopt them in this circuit.'" *Grider*, 618 F.3d at 1263 (quoting *Dickerson*, 200 F.3d at 770). And while the Eleventh Circuit subsequently "recognized [in the § 1985(2) context] an exception to the doctrine for criminal conspiracies where the conduct violates the federal criminal code," it has yet to adopt any other exception. *Id.* In the absence of any applicable exception recognized and adopted by the Eleventh Circuit, Count XIX is barred by the intracorporate conspiracy doctrine. *See id.*; *Detris v. Coats*, 523 F. App'x 612, 615 (11th Cir. 2013); *Tillman v. Orange Cty., Fla.*, 519 F. App'x 632, 636 (11th Cir. 2013).

Under the facts alleged, Plaintiff has not stated and cannot state a plausible claim for conspiracy to deprive him of his constitutional rights. Count XIX of Plaintiff's Complaint must therefore be dismissed with prejudice.

## V.     CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant, City of Boynton Beach's, Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law [DE 5] is **DENIED**.

2. Defendant, Cory Herny's Motion to Dismiss Count XIX with Prejudice and Incorporated Memorandum of Law [DE 13] is **GRANTED**.

3. Defendant Ronald Ryan's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law [DE 15], Defendant, Justin Harris's, Motion to Dismiss and Incorporated Memorandum of Law [DE 20], Defendant Martinez's Motion to Dismiss Plaintiff's Complaint [DE 22], Defendant Maiorino's Motion to Dismiss Complaint (Counts XVII and XIX) and Memorandum of Law [DE 26], and Defendant Matthew Medeiros' Motion to Dismiss Counts XVII and XIX of the Complaint [DE 29] are **GRANTED** only to

the extent that Count XIX of Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. In all other respects, Defendants' Motions are **DENIED**.

**4.** Count XIX of Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. All other claims survive.

**5.** To the extent they have not already done so, Defendants shall answer Plaintiff's Complaint within seven (7) days of the date of rendition of this Order.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 25th day of July, 2016.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record